UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A.Y. V.F.,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-3196-MLP

ORDER

Petitioner A.Y. V.F. is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, asserting his August 3, 2026 redetention without first receiving notice or an opportunity to be heard violated his Fifth Amendment right to due process. (Dkt. # 1, ¶¶ 1-2, 44-50.) He seeks release from custody and permanent injunctive relief related to any future redetention. (*Id*. at 16.) Respondents filed a return (dkt. # 5), together with declarations from ICE Deportation Officer Christopher Hubbard (dkt. # 6) and their counsel, Katherine G. Collins (dkt. # 7). Petitioner filed a traverse (dkt. # 8) along with his

declaration (dkt. # 8-1). Having considered the parties' submissions and the governing law, the Court GRANTS in part Petitioner's petition for writ of habeas corpus (dkt. # 1).[1]

## I. BACKGROUND

On March 13, 2024, Petitioner, a citizen of Venezuela, entered the United States at the El Paso, Texas Port of Entry and was detained. (Dkt. # 1, ¶ 18; Collins Decl., Ex. A at 4.) ICE's Form I-213 record indicates that he expressed a fear of harm or persecution if returned to his native country. (Collins Decl., Ex. A at 4.) On March 14, 2024, an administrative warrant and a Notice to Appear ("NTA") were issued, and Petitioner was released under an Order of Release on Recognizance ("OREC") "[i]n accordance with section 236 of the Immigration and Nationality Act," codified at 8 U.S.C. § 1226. (*Id.*, Exs. B-E.)

On April 9, 2025, Petitioner applied for asylum as the derivative spouse on his wife's application. (Dkt. # 1, ¶ 19; Hubbard Decl., ¶ 8; *see* dkt. # 8-2.)

On August 3, 2026, ICE agents targeted Petitioner for arrest because he was "a citizen and national of Mexico"[2] who "had no pending or approved immigration applications that would allow him to remain in the U.S."[3] (Collins Decl., Ex. F at 3.) Petitioner was pulled over in a vehicle he was driving with his wife and child. (*Id.*) While his wife and child were released, Petitioner was detained, an administrative warrant was issued, and he was transferred to NWIPC. (Dkt. # 1, ¶ 2; Hubbard Decl., ¶ 12; Collins Decl., Ex. G.)

Petitioner filed the instant petition on September 5, 2026. (Dkt. # 1.)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

[2] Respondents acknowledge this was an erroneous identification of Petitioner's citizenship. (Dkt. # 5 at 1 n.2.)

[3] Respondents concede this was an erroneous determination, as "Petitioner had an application for relief pending . . . at the time[.]" (Dkt. # 5 at 2 n.3.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim asserts that Respondents violated his Fifth Amendment right to procedural due process when they redetained him without first providing notice and a pre-deprivation hearing before a neutral decisionmaker. (Dkt. # 1, ¶¶ 45-50.) Petitioner contends the three-part framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), used to assess whether a particular governmental action comports with due process, compels his release. (*Id.* ¶ 42.) He further contends that a permanent injunction is warranted because he faces a significant risk of future redetention. (*Id.* ¶ 43.)

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but concede that courts in this District hold that noncitizens "released on an OREC are detained pursuant to 8 U.S.C. § 1226(a)." (Dkt. # 5 at 2-3.) Respondents do not engage in a *Mathews* analysis, but acknowledge that courts in this District hold that revocation of an OREC requires pre-deprivation process where, as here, "there has not been a material change in circumstances" since the initial release. (*Id.* at 4.)

**A. Detention Authority**

Detention of noncitizens is governed by §§ 235-36 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1225-26. Section 1226(a) provides the "default rule" allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1225 provides for mandatory detention for "applicants for admission" who are "seeking admission." 8 U.S.C. § 1225(b)(2)(A). In a recent decision, the Ninth Circuit "conclude[d] that § 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border[,]" while "Section 1226, by contrast, is best understood as governing inadmissible and deportable aliens present in the interior of the United States." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026).

Respondents appear to argue that, because Petitioner was initially detained at the border, he remains subject to § 1225. (Dkt. # 5 at 2-3.) Given the Ninth Circuit's interpretation of §§ 1225(b) and 1226(a), however, § 1225(b) is not the applicable framework here because Petitioner was redetained within the interior of the United States. Respondents' records confirm this, because the March 2024 arrest warrant cites § 1226 as authority to take Petitioner into custody and both the notice of custody determination and the OREC cite § 1226 as the authority for his release. (Collins Decl., Exs. C-D.)

Accordingly, and consistent with its prior decisions as acknowledged by Respondents, this Court finds that Petitioner's detention falls under § 1226(a). *See, e.g.*, *Francisco Rodas v. Scott*, 2026 WL 2620255, at *4 (W.D. Wash. Sept. 4, 2026) ("Allowing Petitioner to remain released and ostensibly subject to conditions of his [order of supervision] for the last eight years

undermines any characterization of Petitioner's detention as mandatory."). The Court now turns to Petitioner's due process claim.

**B. Due Process Claim**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

Respondents do not challenge Petitioner's analysis of the *Mathews* factors, and the Court concludes that all three favor Petitioner. Petitioner's interest in remaining free from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). The first *Mathews* factor favors Petitioner.

The risk of erroneous deprivation is high where, as here, redetention relied on incorrect factual predicates. ICE records misidentified Petitioner as a citizen of Mexico and, more importantly, indicate that he was arrested because he had no pending applications for relief. Respondents concede this was inaccurate because Petitioner did, in fact, have "an application for relief pending with the immigration court" at the time he was arrested. (Dkt. # 5 at 2 n.3.) The arrest record also indicates Petitioner "expressed no fear of returning to Venezuela" (Collins

Decl., Ex. F at 4) without acknowledging his credible fear claim raised in 2024 or that he had a pending asylum application based on a fear of persecution or torture. (*Id.*, Ex. A at 2, 4.) Moreover, Petitioner's release on an OREC was premised on a finding that he was not a flight risk or danger. (*See* dkt. # 5 at 4 (citing 8 C.F.R. § 1236.1(c)(8)).) Respondents acknowledge that there has been no change affecting that determination, such as a violation of the conditions of the OREC. (*See id.*) Additional safeguards would have been valuable, and thus the second *Mathews* factor favors Petitioner.

Finally, while the government has legitimate interests in enforcing immigration laws and ensuring appearance at proceedings, Respondents provide no reason why a short, pre-deprivation custody hearing before redetention would materially impede those interests, and make no showing of urgency rendering a pre-deprivation hearing impracticable. Custody and bond hearings are routine, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). The third *Mathews* factor favors Petitioner.

In sum, all three *Mathews* factors strongly favor Petitioner. Habeas relief is therefore warranted. Given the absence of lawful process at the outset of redetention and the lack of exigent circumstances, release is the appropriate and constitutionally required remedy and Respondents do not argue otherwise. This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (Where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

**C. Permanent Injunction**

Petitioner seeks a permanent injunction prohibiting Respondents from redetaining him during the pendency of his removal proceedings absent written notice and a hearing at which the government must prove by clear and convincing evidence that he is a flight risk or danger to the community. (Dkt. # 1 at 16.)

A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026).

Petitioner notes that Respondents continue to redetain noncitizens who are subsequently granted habeas relief (dkt. # 8 at 19), and contends that because he was redetained, he "faces a significant risk" of redetention. (Dkt. # 1, ¶ 43.) Petitioner's claim of a significant risk of future redetention is not supported by any evidence, however, such as documentation of other noncitizens granted habeas relief and subsequently detained, or any indication that Petitioner himself will be targeted again. Because the record shows no specific, real, and immediate threat that Petitioner will again be redetained without due process, his request for permanent injunctive relief is denied.

**IV. CONCLUSION**

Based on the foregoing, the Court hereby ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(a) Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

(b) Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2) Petitioner's request for a permanent injunction (dkt. # 1 at 16) is DENIED.

(3) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer prior to filing any motion.

Dated this 6th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge